993 So.2d 255 (2008)
Julie KENNEDY-FAGAN
v.
The ESTATE OF Emory L. GRAVES.
No. 2007 CA 1062.
Court of Appeal of Louisiana, First Circuit.
July 21, 2008.
*259 Michael S. Fawer, Michael W. Hill, Covington, LA, Thomas E. Schafer, III, New Orleans, LA, for Plaintiff/Appellee, Julie Kennedy-Fagan Individually and on Behalf of her Deceased Mother Sylvia Kennedy Graves.
Raymond C. Burkart, Jr., Katherine O. Hillery, Covington, LA, for Defendant/Appellant, the Estate of Emory L. Graves.
Before GAIDRY, McDONALD and McCLENDON, JJ.
McDONALD, J.
This is an appeal of a judgment for damages in a wrongful death suit. For the following reasons we amend the judgment and as amended, affirm.

FACTS AND PROCEDURAL BACKGROUND
Emory and Sylvia Graves married in 1971. Sylvia had two children from a previous marriage, Julie and Richard. Emory had three children, Emory, Jr., Ann, and Christy.[1] In June and September of 1999, Sylvia suffered strokes that impaired the left side of her body and severely restricted her ability to speak. Upon her discharge from the hospital, she returned to *260 the home with Emory. In the summer of 2000, Emory was hospitalized for surgery. Julie, who lives in Florida, came to Slidell to care for her mother.
In early May 2001, Sylvia had another stroke. She was hospitalized for nearly a month. An attempt was made to put her in rehabilitation, but Sylvia was agitated and uncooperative in therapy, so it was decided to return her to her home. Although her ability to speak had improved after the third massive stroke, her general condition was much worse. She was not ambulatory, was confined to bed or a wheelchair, and needed assistance with all her personal needs. A food tube had been inserted to assist with feeding. In addition to the neurological problems, Sylvia suffered from diabetes, hypertension, and heart problems. Upon discharge from the hospital, her treating physicians recommended hospice services to the family, as due to Sylvia's age, the recurrence and severity of the stroke, and her other health problems, there was little hope for improvement. Sylvia returned home on May 30, 2001 and was cared for by Emory and home health sitters. Joyce Lester worked for the Graveses from 8:00 a.m. to 3:00 p.m.; another sitter, Edna, worked from 3:00 p.m. to 11:00 p.m. Julie, who is a school teacher was off work during the summer, also was in Slidell to assist with the care of her mother during part of her hospital stay, when she was moved home, and until early July when Julie left for vacation with her husband.
Almost immediately following Julie's departure, Sylvia's mental attitude worsened. She was exceedingly angry and uncooperative with the sitters, and expressed considerable anger toward Emory for prior misconduct. Emory candidly acknowledged to Joyce Lester that he had made many mistakes as a husband and early in their marriage, and he was dedicated to caring for Sylvia because he loved her and in an effort to compensate for the past.
On Friday, July 27, 2001, Sylvia and Emory had been together talking when Joyce arrived. Joyce was concerned about Emory because he seemed exhausted. Sylvia was very agitated. Joyce had considerable difficulty calming her and was unable to bathe Sylvia as she normally would. As the morning progressed, Sylvia was nagging and berating Emory, demanded that the sitters be discharged, reminded Emory that he "had promised," and called Emory a coward. Emory, a World War II veteran, seemed particularly troubled by the latter accusation and commented that he knew what he had to do. It was Emory's custom to have a drink in the afternoon, but on that day he began drinking earlier in the day.
In the early afternoon, Emory told Joyce to get her time sheet together and wrote her a check for her services for that week. Although Joyce also generally worked on Saturday mornings, and had sometimes been paid on Friday for the entire week including Saturday, Emory advised Joyce to total the time only through Friday, and encouraged her to leave prior to the end of her shift. As Joyce was leaving, Emory walked her to her car, hugged her and thanked her for all she had done for the family. Immediately upon leaving the Graveses' residence, Joyce went to a convenience store, called Christy Graves's medical office and advised the office manager to tell Dr. Graves to come immediately as there was an emergency. Joyce expressed her concern that Emory planned to commit suicide.
Dr. Christy Graves and her office manager, a close friend, immediately drove to the Graveses' home. Christy entered the home, calling out for her father and stepmother, but received no response. When she entered the room in which Sylvia had *261 been recuperating, she found both Sylvia and Emory dead of gunshot wounds, apparently inflicted by Emory.
Julie filed suit against the estate of Emory L. Graves for the wrongful death of her mother pursuant to La. C.C. art. 2315.2 and for a survival action pursuant to La. C.C. art 2315.1. Ann and Christy Graves, as co-executrixes of the succession of Emory Graves, filed an answer and reconventional demand. The defendants in reconvention were Julie Kennedy-Fagan, individually and in her capacity as executrix of the succession of Sylvia Kennedy-Graves, and the succession of Sylvia Kennedy-Graves.
In August 2002, Julie filed a motion for partial summary judgment on the issue of liability which was heard and denied on January 24, 2003. Also, Julie filed peremptory exceptions of prescription, no cause of action and no right of action with regard to the reconventional demand in October 2002, which were set for hearing on November 22, 2002, but do not appear to have been heard. The wrongful death and survival claims and reconventional demands were tried before a jury on December 4 through 7, 2006. At the conclusion of the plaintiff's case, the defendants moved for a directed verdict as to the survival action, which the court granted. The survival action was dismissed, as Sylvia had apparently died immediately from the gunshot wound to her head.
Testimony was elicited from several persons on behalf of the defendant, including Richard and Christy, both of whom testified that it was common knowledge within the family that Sylvia and Emory had expressed a preference to take their own lives rather than live under certain conditions. At the conclusion of the defendants' case, the plaintiff moved for a directed verdict on the reconventional demand, the core of which was based on intentional infliction of emotional distress by Julie.
The trial court noted that many of the claims in the reconventional demand had either prescribed or occurred after the deaths of the Graveses and, therefore, could not have been a cause of emotional distress to them. Further, focusing on the claims of mental anguish to Emory Graves and relying on White v. Monsanto Co., 585 So.2d 1205 (La.1991), the trial court found that, even viewing the evidence in the light most favorable to the plaintiff-in-reconvention, Julie Fagan's actions were not extreme in degree or, quoting White, "beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." Therefore, the trial court granted the motion to dismiss the reconventional demand.
Thereafter, the trial court and counsel had extensive discussions on the record regarding the jury charges and interrogatories. Of most significance to this appeal, is the defendants' request that the jury consider the conduct of Sylvia Graves and apportion fault in accordance with La. C.C. art. 2323 for the damage caused to Julie. While several cases were mentioned, defendant's argument was based on the law regarding negligence and intentional acts, and represented to the trial court that the facts in this case were unique. Plaintiff's counsel argued strenuously that the case of Bourne v. Seventh Ward Hospital, 546 So.2d 197 (La.App. 4th Cir.1989) was precisely on point, that the intentional act of Emory was the cause in fact of Sylvia's death, and it would be reversible error to allow the jury to consider Sylvia's conduct. After taking a recess to review the law, the trial court concluded that the jury charges and interrogatories would deal strictly with the issues of causation and wrongful death, and that there would be no charges regarding negligence or intentional acts or *262 apportioning of fault. The trial court reasoned that while Emory and Sylvia supposedly had discussed and possibly had a suicide pact, there was no evidence regarding any specific acts by Sylvia at the time of her death. The defendant lodged an objection to the jury not being instructed on the law purportedly relevant to the suicide pact and the intentional and negligent acts by Sylvia Graves and Julie Fagan. The plaintiff objected to the failure to include an interrogatory and an item of damages on the verdict form for the loss of jewelry.
The jury returned a verdict finding that Emory Graves intentionally shot Sylvia Graves; that the gunshot was the cause in fact of Sylvia Graves's death; that Julie Kennedy-Fagan sustained injury as a result of the wrongful death of her mother; and that she was entitled to recover damages for past pain and suffering of $40,000.00, loss of companionship of $100,000.00 and emotional distress of $40,000.00, for a total of $180,000.00.
The defendant appeals alleging six assignments of error that essentially place three issues before this court: (1) the failure of the trial court to give jury instructions or interrogatories regarding comparative fault, solidary liability and civil conspiracy pursuant to La. C.C. arts. 2323 and 2324, (2) error by the trial court in dismissing the reconventional demand, and (3) error in the damage award, especially in failing to instruct the jury not to award damages as a result of missing jewelry once it sustained the objection to plaintiff listing the missing jewelry as an element of damages. The plaintiff did not appeal, nor answer the appeal.

LAW AND ANALYSIS

Louisiana Civil Code articles 2323 and 2324
As noted above, defendant, appellant here, contends that Louisiana law and jurisprudence required the trial court to allow the jury to apportion the fault of Sylvia as a contributing cause to the damages sustained by Julie. The trial court repeatedly ruled correctly during an extremely difficult and contentious case. However, we find that the Bourne case on which the trial court relied in denying defendants' requested jury instructions regarding fault is not controlling here.
Bourne was a medical malpractice action brought against a physician and two hospitals in connection with treatment of plaintiff's daughter during the interval between the daughter's suicide attempt by overdose and her death. The trial court found that the intentional act of taking the overdose preceded the negligent acts of the defendant medical care providers, and their acts were an intervening and superseding cause of the death. It was argued that this case established a rule that prevented the court from considering any prior acts by Sylvia since Emory's intentional act was an intervening and superseding cause of Sylvia's death. We do not agree.
The court in Bourne held that the trial court correctly decided the issue of contributory negligence according to the law in effect in Louisiana in 1978. At that time, any negligence on the part of the plaintiff would bar recovery. The law regarding comparative fault at issue here, La. C.C. art. 2323, was amended in 1979 and in 1996. It currently provides:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including *263 but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraph A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
In the matter before us, we are asked to determine if the trial court erred by failing to allow the jury to quantify the fault of Sylvia in accordance with the principles contained in the article. Clearly, the article provides that the provisions of paragraph A shall be applied to any claim for recovery of damages, asserted under any law or theory of liability, regardless of the basis for liability. The Louisiana Supreme Court examined the article in Landry v. Bellanger, 02-1443 (La.5/20/03), 851 So.2d 943, and noted that the provisions indicate that Louisiana employs a "pure" comparative fault system.[2] Further, in examining the effect of paragraph C, the court determined that "Nothing in this section prevents the determination of the percentage of fault of all persons causing or contributing to the injury at issue. Rather, Section C provides that when plaintiff is injured as a result of the fault of an intentional tortfeasor, his negligence shall not reduce his recovery." Id, 851 So.2d at 953. It concluded that the fault of all persons causing or contributing to injury, regardless of the basis of liability, is to be determined.
Importantly to the matter before us, the court in Landry addressed apportionment of the fault of intentional tortfeasors:
It is appropriate to consider each party's respective fault when a matter involves intentional tortfeasors. In prohibiting the reduction of a negligent plaintiff's damages, Article 2323(C) reflects a legislative determination that on the continuum of moral culpability, the act of an intentional actor should not benefit from a reduction in the damages inflicted on a less culpable negligent actor. In the face of the silence of La. C.C. art 2323(C) regarding how to address the comparative fault of two intentional actors, we can extrapolate from paragraphs A and B of La.C.C. art 2323 that the fault of intentional actors can be compared.
The plaintiff in this matter is Julie. The survival claim was dismissed and that decision was not appealed. Therefore, our analysis is limited to the wrongful death action and specifically does not address survival actions, either here or under similar facts. Assuming that Julie is not culpable, *264 we consider whether the jury should have been given instructions on the law of comparative fault with regard to the actions of Sylvia.
It is the plaintiff's position that no suicide pact ever existed and that the jury found the non-existence of any suicide pact. However, the jury had no opportunity to make a factual finding as to whether Sylvia contributed to the wrongful act. The jury was asked only whether Emory Graves intentionally shot Sylvia Graves and whether the conduct of Emory Graves was the cause-in-fact of her death. The answer to both of those questions is obviously yes. Appellee characterizes the jury's findings as being a choice between two conflicting viewpoints and states that the jury obviously chose to believe that no such pact existed. We find that assertion untenable, since the jury was not given any instruction remotely applicable to the alleged suicide pact.
The trial court stated that there was no evidence of any specific acts by Sylvia at the time of her death. We disagree. Legal issues concerning fault in a civil action are decided based on a preponderance of the evidence, which requires a fact-finder to consider all evidence, direct or circumstantial, to determine whether a fact is more probable than not. Hanks v. Entergy Corp., 06-477 (La.12/18/06), 944 So.2d 564, 578. Proof is sufficient to constitute a preponderance of the evidence when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. Cay v. State Dep't. of Trans. and Dev. 93-0887 (La.1/14/94), 631 So.2d 393, 395. Not only does this record reveal direct evidence of statements by Sylvia immediately prior to her death, but strong circumstantial evidence on the issue of the suicide pact.
There was testimony by three witnesses, including two family members, regarding discussions or comments by Sylvia and Emory regarding a course of action that could be described as a suicide pact. Julie denied any knowledge of a suicide pact. However, this testimony is questionable considering the statement of Joyce Lester that Julie had told her that her mother and Emory Graves had "some kind of stupid pact, you know, one wouldn't live without the other." Further, the hospital logs indicate that Julie had expressed concern to hospital staff regarding suicidal tendencies of her mother; Julie's testimony was also contradicted by the actions of Sylvia in putting her finger to her head and mimicking the firing of a gun, witnessed by Julie.
Defendant contends that La. C.C. art. 2323 mandates the comparison of fault of any person causing or contributing to injury, death, or loss. We agree. We are also mindful that when legal error committed by the trial court interdicts the fact-finding process, the appellate court must conduct a de novo review of the record. Levy v. Bayou Industrial Maintenance Services, Inc., 03-0037 (La.App. 1st Cir.9/26/03), 855 So.2d 968, 974. As the defendants note, the inquiry for the appellate court is whether the erroneous jury instruction misled the jury to such an extent that the jury was prevented from doing justice. Theriot v. Bourg, 96-0466 (La.App. 1st Cir.2/14/97), 691 So.2d 213, 220.
Defendants complain that in addition to failing to instruct the jury regarding comparative fault, the trial court refused to give a jury instruction as requested on La. C.C. art. 2324(A), which provides "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person for the damage caused by the *265 act." It also failed to allow the jury to be instructed that "an act is intentional when the actor either (1) consciously desires the physical result of her act, whatever the likelihood of that result happening from her conduct, or (2) knows that that result is substantially certain to follow from her conduct, whatever her desire may be as to the result." Bazley v. Tortorich, 397 So.2d 475, 481 (La. 1981). Objection was further made to the failure to give a jury instruction on criminal assistance to suicide, La. R.S. 14:32.12.
Even agreeing that Sylvia's acts would meet the legal definition of an intentional tort and that they arguably constituted a violation of La. R.S. 14:32.12, we cannot agree with the result argued for by appellant. First, this is not a criminal trial of Sylvia. It is the wrongful death action brought by Julie. Assuming that the murder/suicide was the result of a civil conspiracy by Emory and Sylvia, La. C.C. art. 2324(A)[3] requires that the damage suffered be attributed to the parties who conspired to commit the intentional act, in solido. "In solido" was defined in an early edition of Black's Law Dictionary as "In the civil law, for the whole as a whole. An obligation in solido is one where each of the several obligors is liable for the whole." Black's Law Dictionary, 716 (5th ed.1979). The current edition refers inquiries regarding "in solido" to "solidary liability", which provides: "Civil law. The liability of any one debtor among two or more joint debtors to pay the entire debt if the creditor so chooses." Black's Law Dictionary 933 (8th ed.1998). Julie chose to file suit against the estate of Emory Graves. Because Emory's estate could be found by the jury to be liable for all of the damage suffered by Julie, we find that the failure of the trial court to give the requested jury charges did not interdict the fact-finding process such that we are required to conduct a de novo review.[4] As between the plaintiff and the defendants before us, it is not necessary for us to allocate fault because there will be no reduction in Emory's liability by a determination of Sylvia's percentage of fault.

The Reconventional Demand
Defendants next contend that the reconventional demand for intentional infliction of emotional distress should have been submitted to the jury. A trial judge has much discretion in determining whether to grant a motion for directed verdict. Theriot v. Bourg, 691 So.2d at 219. McNeely v. Ford Motor Co., 98-2139 (La.App. 1st Cir.12/28/99), 763 So.2d 659, 664, writ denied, (La.4/28/00), 760 So.2d 1182. The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary verdict. Id. A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the party opposing the motion, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Id. The propriety of a directed verdict must be evaluated in light of the substantive law underpinning the party's claims. Id.
In Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017, the Louisiana Supreme Court reviewed the law on intentional infliction of emotional *266 distress. In Nicholas, defendants objected to the finding of the lower courts that their actions in termination of Nicholas's employment with Allstate were sufficient to constitute the tort of intentional infliction of emotional distress. In reaching its decision to reverse the decisions of the lower courts, the supreme court reiterated the White holding that:
In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be substantially certain to result from his conduct.
We have already noted the trial court's discussion of this issue with regard to Julie's conduct. After careful review of the evidence and reasonable inferences in light of the substantive law, we find no error on the part of the trial court in dismissing the reconventional demand against Julie.
Louisiana Revised Statutes 9:291 addresses lawsuits between spouses and provides that spouses may not sue each other except for causes of action pertaining to contracts or arising out of the provisions of Book III, Title VI of the Civil Code and certain enumerated actions, none of which are applicable here. Suits in tort by a person against a spouse are prohibited by this law. Since Emory could not bring an action against Sylvia for intentional infliction of emotional distress, Emory's succession may not maintain this action on his behalf. Therefore, it was not error for the trial court to dismiss the reconventional demand against Sylvia.

The Damage Award
The jury awarded Julie Kennedy-Fagan $180,000.00 in damages for her wrongful death claim. It is the defendants' position that under the facts of this case, the award was an abuse of the jury's discretion and is excessive under Louisiana law. The law regarding appellate review of damage awards provides that the discretion vested in the trier of fact is "great." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). On appeal, consideration of the jury's determination is limited to a review for manifest error or abuse of discretion. Wingfield v. State Dept. of Trans., 01-2668 cw 01-2669 (La.App. 1st Cir.11/8/02), 835 So.2d 785, 806. The reviewing court must evaluate the particular injuries and their effects on the particular injured person. Id. Before we decide whether a damage award of $180,000.00 to an adult child for the loss of an 80-year-old mother under the facts of this case is an abuse of the jury's great discretion, we will look at the other objection to the jury verdict raised by the defendant.
The defendants maintain that opposing counsel's conduct during closing arguments prejudiced the jury and deprived it of the right to a fair and impartial trial. Specifically, defendant objected to the use of a chart that showed jewelry valued at $300,000 as an element of plaintiff's damages. In objecting, the defendant argued to the trial court that the jewelry was not listed as an element of damages in the pleadings and therefore, Julie could not now ask the jury to make an award for this loss.
The trial court sustained the objection, noting that the parties were still litigating issues regarding the succession, and the issue of the missing jewelry should be determined in that action. However, counsel for Julie contended that he wanted to address the issue with the jury, and the *267 trial court agreed to allow this. Counsel argued at some length regarding the missing jewelry, reviewing the facts beginning with the 1999 incident in which the police were called, maintaining that Julie had only taken the jewelry to insure its safety and it was promptly returned. The record suggests that when Julie was originally questioned by the family, she denied any knowledge of the missing jewelry, although she immediately returned it when she was contacted by the police. Counsel also outlined the facts surrounding the last time the jewelry was seen. Maintaining that Emory was the last person to have the jewelry, counsel stated that the jury could consider this loss in deciding how much money Julie was owed in damages. This is legally incorrect. Even had Julie listed the lost jewelry as an element of damages in her petition, it was not recoverable in a wrongful death action.
Wrongful death actions have limited types of damages. Taylor v. Giddens, 618 So.2d 834 (La.1993). The elements of damage for wrongful death are loss of love, affection, companionship, services, and support, as well as medical and funeral expenses. Rideau v. State Farm Mut. Auto. Ins. Co., 06-0894 (La.App. 1st Cir.8/29/07), 970 So.2d 564, 580 and cases cited therein. The lost jewelry simply has no part in Julie's claim for damages in this action. Aside from the fact that the claim would belong to Sylvia's estate, not Julie, the jury was asked to increase Julie's damage award assuming Emory had taken the jewelry, a fact that was not determined. We are asked to find that this legal error tainted the jury verdict.
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict, Nicholas v. Allstate Ins., Co., 99-2522 (La.8/31/00), 765 So.2d 1017, 1023. In Nicholas, the court was examining the issue of whether a jury charge was so incorrect or inadequate as to preclude the jury from reaching a proper verdict. The court found that the jurors were not properly instructed in the law and that the appellate court erred as a matter of law by failing to find that the jury instructions misled the jury in its assessment and failed to interdict the jury verdict. The objections raised with regard to the damage award here are (1) that it is an abuse of the jury's discretion and (2) it was tainted by improper argument. The appellant objects to the chart listing Julie's damages including $300,000.00 for the missing jewelry. We note that the chart also listed over $300,000.00 for psychological counseling, an item that is also not allowed as an element of damages in a wrongful death action.
We cannot distinguish Nicholas from the matter before us by noting that the court in Nicholas was considering the issue of an improper jury instruction that failed to adequately disclose the law, whereas the defendants here are asserting abuse of discretion and improper argument  the defendants also objected that the charges failed to properly instruct the jury in the applicable law. When we considered that issue, we found that because Emory's estate could be found liable for 100% of the damages, the fact that the jury was not instructed on comparative fault did not interdict its findings such that we are required to conduct a de novo review. The fact remains that the jury was not properly instructed in the law. Moreover, regardless of the objection to the jury verdict, our analysis requires us to answer the same question: was the jury misled to the extent that it was prevented from doing justice? We find that the answer to that question is yes.
We find that the cumulative effect of the inadequate jury instructions and improper *268 argument so misled the jury as to the law applicable to the matter before it that its verdict was tainted and cannot be maintained. Further, even were the jury instructions not found to be inadequate, the verdict's assessment of the damages recoverable is not in conformance with the law.
As established previously, the elements of damage for wrongful death are loss of love, affection, companionship, services, and support, as well as medical and funeral expenses. The wrongful death action is intended to compensate the beneficiaries from the moment of death and thereafter. In Re Brewer, 05-0666 (La. App. 1st Cir.5/5/06), 934 So.2d 823, 827, Under the facts of the case before us, there are no compensable claims for loss of services and support because Sylvia was not providing either of these to Julie. Julie did not request compensation for medical or funeral expenses.
The damage sustained by Julie for which compensation is sought, and to which she is legally entitled, is the loss of love, affection and companionship of her mother. These are all mental or emotional damages and are one compensable element. The jury verdict form provided elements of damage for past pain and suffering, loss of companionship, and emotional distress. Julie did not suffer physical pain; the past pain and suffering was emotional pain. An award for emotional pain and emotional distress is duplicative. Julie could only receive a separate award for emotional distress if she was entitled to maintain a Lejeune claim pursuant to La. C.C. art. 2315.6, which she is not. Damages were also awarded for loss of companionship. As noted previously, there is one element of damages in wrongful death actions intended to compensate the victims for the loss of love, affection, and companionship, i.e., the emotional loss. It was legal error for the jury to make three separate awards for this one element of damage.
It is a well-settled premise that Louisiana law does not allow for double recovery of the same element of damages. Albert v. Farm Bureau Ins. Co., 05-2496 (La.10/17/06), 940 So.2d 620, 622. In Albert, the supreme court reiterated the underlying proposition as it had been stated in Gagnard v. Baldridge, 612 So.2d 732, 736 (La.1993):
A wrongdoer should not be required to pay twice for the same elements of damages. Double recovery would be in the nature of exemplary or punitive damages which are not allowable under Louisiana unless expressly provided for by statute.
We also note that the jury was further misled by argument of plaintiff's counsel on the time for which compensation is owed. Compensation is owed from "the moment of death and thereafter." To what does "and thereafter" refer? It does not mean, as suggested by plaintiff to the jury here, that the plaintiff is arguably entitled to be compensated for the rest of her life. The law and jurisprudence address the damage caused by the fault of a tortfeasor for an untimely and unexpected death; the damage is not sustained for longer than the decedent would have lived without the intervention of the tortfeasor. Compensatory damages are "designed to place the plaintiff in the position in which he would have been if the tort had not been committed." Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70, 74. Therefore, compensation is owed from the time of the wrongful death until the natural death, not for the length of time the plaintiff grieves over the wrongful death.
For the multiple reasons heretofore referenced or examined, we find that *269 the jury verdict in this case is tainted and cannot be maintained. When a jury verdict is tainted and not entitled to a presumption of regularity, the jury decision should be thrown out and the appellate court should undertake a de novo review of the record and implement its own judgment based on the evidence. Billiot v. Terrebonne Sheriff's Office 98-0246 (La. App. 1st Cir.2/19/99), 735 So.2d 17, 21; writ denied (La. 7/2/99), 747 So.2d 22.
Our examination of the record reveals that Julie is a married adult in her mid-fifties. She lives in Florida and has a full-time job in the school system. Her relationship with her mother had been strained in the past, although Julie testified that they had reconciled. The record also contains other evidence of the relationship between Julie and Sylvia and how the loss of her mother may have damaged Julie. Julie returned to Slidell to assist with the care of her mother. We believe Julie would have done so, even had she not been receiving money from Emory as compensation. We also note, however, that on the last occasion when Emory spoke with Julie and requested that she come to Slidell, after she returned from her vacation, she declined.
Sylvia's physical and emotional health was significantly impaired, diminishing her ability to offer Julie companionship or emotional support. The opinion of Sylvia's treating physicians in 2001 was that there was little hope of improvement of her condition and considering her age and infirmities her life expectancy was very limited.
Having painstakingly examined this record, considering all of the facts and law outlined above, as well the totality of circumstances evidenced in the record, we award Julie Kennedy-Fagan $40,000 for her wrongful death claim against the estate of Emory Graves.
Based on the foregoing, the judgment signed December 29, 2006 in conformance with the jury verdict rendered in this matter December 7, 2006, is amended to award total damages to Julie Kennedy-Fagan in the amount of $40,000.00, and costs of the proceedings are amended to be paid 50% each by the parties. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to Julie Kennedy-Fagan.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.
GAIDRY, J., concurring in part and dissenting in part.
McCLENDON, J., concurs and assigns reasons.
GAIDRY, J., concurring in part and dissenting in part.
Although I agree with most of the conclusions reached by the majority in its excellent analysis of the issues, I must dissent in part on a major legal issue, based upon my interpretation of the public policy of this state and disagreement with the judgment as amended. I would affirm the trial court's judgment.
Regardless of whether the trial court's failure to instruct the jury regarding the application of comparative fault under La. C.C. art. 2323 was "harmless" in terms of interdicting the jury's factual determinations, the existence of a "suicide pact" should be considered legally irrelevant under the duty-risk analysis and therefore for purposes of apportionment of fault. In my view, it is, or should be, against the public policy of this state to implicitly validate such a pact by according culpability to the passive victim of murder in a murder-suicide.
Although the legislature and the courts of our state have not expressly and directly addressed this complex issue, my conclusion *270 that public policy does not permit assessment of comparative fault to the supposed consensual victim of murder is supported by the analogous intent expressed in La. C.C. art. 2323(C). Similarly, a leading commentator has observed that "[t]he considerable majority of the courts have attempted, in cases of mutual combat and similar batteries, to vindicate a conception of public policy by holding that the consent given will ... not protect the defendant against a civil action for the damage inflicted." Prosser and Keeton on Torts, § 18, at p. 122 (5th ed.1984). More to the point, that commentator further notes: "Arguably, no one should have the capacity to consent to conduct intended to bring about his death, or intended to bring about an invasion likely to result in his death...." Id. at p. 123. Because the law should not recognize a victim's capacity to consent to his or her death as mitigating, even in part, the perpetrator's tort, such "consent" should not be considered a contributing factor in the victim's death.
McCLENDON, J., concurs and assigns reasons.
I cannot agree and must concur with the opinion for several reasons. First and foremost, the analysis in the opinion fails to address whether the victim, Mrs. Graves, consented to the intentional tort. I believe that this issue must be decided prior to any discussion of fault allocation. Generally, the defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim. Cole v. State Department of Public Safety and Corrections, 01-2123, p. 11 (La.9/4/02), 825 So.2d 1134, 1142; Andrepont v. Naquin, 345 So.2d 1216 (La.App. 1 Cir.1977). Consent may be expressed or implied; if implied, it must be determined on the basis of reasonable appearances. Cole, 01-2123 at p. 11, 825 So.2d 1134, Andrepont, 345 So.2d at 1219. The existence of consent means that the defendant did not commit a tort. Landry v. Bellanger, 02-1443, p. 11 (La.5/20/03), 851 So.2d 943, 952. See also William E. Crawford, Tort Law § 13.24 at p. 212, in 12 Louisiana Civil Law Treatise (2000) ("Consent to an intentional wrong ordinarily vitiates the wrongful quality of the conduct.").
Therefore, if one consents to an intentional tort, there can be no recovery. However, in the present matter there was insufficient evidence that Mrs. Graves consented to her own death. Despite some evidence of an apparent murder/suicide pact between Mr. and Mrs. Graves, the evidence regarding specific consent on the day of the murder was limited to the testimony of the sitter, Joyce Lester, who testified that she was attending to Mrs. Graves that morning when Mrs. Graves began kicking and screaming. Mr. Graves entered the room asking what was wrong and Mrs. Graves "became furious" and "started screaming and hollering, `you liar,' ... `you promised' ... `we talked about this.'" Based on these limited facts, I do not believe that the evidence clearly established that Ms. Graves consented to her own death immediately prior to the murder/suicide. Thus, I do not reach the more difficult moral question of whether the defense of consent should be recognized in a murder/suicide pact thereby validating the illegal act.
Further, I disagree with the majority opinion regarding its discussion of in solido liability under the facts of this case. In my opinion, LSA-C.C. art. 2324 must be read in conjunction with LSA-C.C. art. 2323 regarding comparative fault and thus fault would normally have to be allocated. Nevertheless, being of the opinion that the statements of Mrs. Graves fail to establish legal fault, I concur with the result.
*271 Finally, regarding the issue of damages, I believe that the amount awarded by the jury shocks the conscience and was an abuse of its much discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993). cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261. In my opinion, based on the facts of this case and considering the strained relationship between the plaintiff and her mother, the highest amount that could have been awarded is $40,000.
Accordingly, I respectfully concur.
NOTES
[1] Emory Graves, Jr. died prior to the institution of these proceedings.
[2] There are three main systems of comparative negligence, named after the states that first adopted them. They are the Mississippi, Georgia, and New Hampshire plans. Mississippi enacted a "pure" system in which the plaintiff can recover diminished damages even though at fault himself as long as the defendant has some negligence. Twelve states including Louisiana have adopted a "pure" comparative fault system. Comparative Fault, § 1.11 Woods and Deere (3rd ed.1996).
[3] Louisiana Civil Code article 2324(A) provides: He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
[4] We are not asked to address the issue of contribution among conspiring tortfeasors.