PETTIGREW, J.
|¡Jn this action for damages, plaintiff-appellant, individually, and in his capacity as the dative testamentary executor of the estate of his late mother, filed suit naming *530 numerous defendants, including his sister, who was the former testamentary executrix, the former attorneys for the estate, their respective malpractice insurers, a bank holding assets belonging to the estate, and an employee of said bank. Cross motions for summary judgment were later filed, on behalf of plaintiff-appellant, as well as on behalf of the bank and its employee. From a denial of his motion for summary judgment and a grant of summary judgment in favor of the bank and its employee, which dismissed his claims against said defendants, plaintiff-appellant has appealed to this court.
FACTS
The present litigation is yet another lawsuit arising out of the 2001 murder-suicide of Emory Lea Graves, Sr. and his wife, Sylvia Antonia Acosta Kennedy Graves. See In re Succession of Graves, 2007-2180 (La.App. 1 Cir. 3/12/08), 985 So.2d 140, writ denied, 2008-0799 (La.6/6/08), 983 So.2d 919; Kennedy-Fagan v. Estate of Graves, 2007-1062 (La.App. 1 Cir. 7/21/08), 993 So.2d 255, writ denied, 2008-2079 (La.11/10/08), 996 So.2d 1073.
Sylvia Antonia Acosta Kennedy Graves, decedent herein (“decedent”), died testate as a result of a murder-suicide on or about July 21, 2001. The decedent left two legatees, who were children from her first marriage — a daughter, defendant Julie Esther Kennedy-Fagan (“Julie”), and a son, plaintiff-appellant, Richard Vincent Kennedy (“Richard”). According to the terms of the decedent’s will, Julie was named as executrix of the estate. Due to her apparent failure to properly administer and liquidate decedent’s estate, Julie was removed from her duties as testamentary executrix by order of the trial court. In Julie’s stead, her brother and co-heir, Richard, was appointed by the trial court to serve as the dative testamentary executor.
On January 3, 2006, Richard instituted the present tort suit, appearing individually, and in his capacity as executor of the estate. Based upon the allegations of his petition, Richard seeks to recover estate assets, monies, and damages resulting from the actions |3and/or inactions of the defendants named herein. Following a denial of his motion for a partial summary judgment and a grant of summary judgment in favor of the bank and its employee dismissing his claims against said defendants, Richard now appeals. We affirm in part, reverse in part, and remand.
Richard alleged in the instant petition that his sister Julie retained attorneys T. Lynn Witt-Stamps and her husband, attorney J. Jackson Stamps,[1] to represent decedent’s estate, and began administration of the estate on or about August 8, 2001. It was also alleged that “[t]he estate consisted of several valuable properties, including immovable rental properties in Louisiana and other states, three automobiles, and valuable estate jewelry, which was [sic] owned by decedent at the time of her death.” Richard further alleged that Julie and her attorneys opened succession bank accounts at the Bank of Louisiana (“Bank”), 636 Gause Boulevard, Slidell, Louisiana, with the assistance of their friend and/or associate, defendant Shirley Henderson, the assistant vice president and manager of the Gause Boulevard Branch of the Bank. It was alleged that Ms. Henderson “routinely breached her duties to the bank and its clients in order to assist [Julie], and her attorneys.” Richard claimed that Julie together with “de *531 fendants T. Lynn Witt-Stamps and J. Jackson Stamps, took physical possession of the estate jewelry, which [Julie] herself valued at over $100,000.00, and placed [said] jewelry into a [safety deposit] box located at the [Bank].”
Richard alleged in the instant action for damages that during Julie’s administration of the estate, and while attorneys T. Lynn Witt-Stamps, J. Jackson Stamps (collectively, “Witt and Stamps”), and later, Thomas Schafer, III, provided legal representation to the estate, said defendants were allowed to enter the safety deposit box at the Bank without obtaining court approval and without even signing signature cards for the said safety deposit box. It was also alleged that during one of these unrecorded entries into the |4estate’s safety deposit box, the valuable pieces of estate jewelry were removed leaving only “worthless costume jewelry and paste.”
Additionally, Richard alleged that Julie authorized Mrs. Witt-Stamps to sign checks on the decedent’s bank accounts and withdraw over $30,000.00 in attorney fees from said accounts without court approval or notice and without the court’s knowledge.
Richard also alleged that the Bank knew or should have known of the actions of Julie’s attorney, Mrs. Witt-Stamps, as the Bank kept banking records in the normal course of its business. Additionally, it was alleged that the Bank knew or should have known of the close relationship between its employee, Ms. Henderson, Julie, and Mrs. Witt-Stamps, and should have closely monitored the decedent’s bank accounts.
Richard further alleged that Julie’s subsequent attorney, Mr. Schafer, knew or should have known that prior counsel, Witt and Stamps, had removed funds from the decedent’s accounts without court approval, as records of said transactions and letters from Julie “authorizing” withdrawals by Mrs. Witt-Stamps were later discovered among Mr. Schafer’s files.
It was alleged that the aforementioned unauthorized acts were effectuated during Julie’s administration of decedent’s estate with the apparent assistance of Ms. Henderson, in her official capacity as a bank officer with the Bank, thereby rendering the Bank vicariously liable.
ACTION OF THE TRIAL COURT
On April 8, 2010, Richard filed a motion for partial summary judgment against the Bank and Ms. Henderson for estate funds that were illegally dispersed to Witt and Stamps by the Bank and Ms. Henderson. Richard also sought a partial summary judgment on the issue of liability against these same defendants for the jewelry that was allegedly stolen from the safety deposit box at the Bank.
In response, the Bank and Ms. Henderson filed a cross-motion for summary judgment and claimed that the Bank was not liable because it was allegedly authorized by Julie, its “customer” and executrix of the estate, to issue 11 cashier’s checks signed by Ms. Henderson for funeral expenses, legal fees, and taxes. The Bank argued that since |sJulie had consented to its drafting of the cashier’s checks and given authorization for the estate’s attorneys to enter the safety deposit box, the Bank was only honoring the wishes of its customer and could not be held liable.
Following a hearing on June 29, 2010, the trial court, for reasons orally assigned, denied Richard’s partial motion for summary judgment against the Bank and Ms. Henderson, and dismissed Richard’s claims against these defendants. Although the trial court specifically rejected the arguments put forth by the Bank regarding *532 prescription and abandonment,[2] the trial court found that Julie, in her capacity as executrix, had the authority to write checks and authorize withdrawals from the decedent’s Bank accounts. It was on this ground that the trial court granted the cross-motion for summary judgment filed by the Bank and Ms. Henderson. From this judgment, Richard, both individually, and in his capacity as executor of the estate of decedent, has appealed.
ISSUES PRESENTED ON APPEAL
In connection with his appeal in this matter, Richard presents the following issues for review and disposition by this court:
1. Did the trial court commit an error of law by failing to apply the legal presumption of liability for a bank that loses deposits which it was paid to keep safe?
2. Did the trial court commit an error of law by failing to apply the legal presumption of liability under the theory of Res Ipsa Loquitur?
3. When a bank’s customer and account holder dies, can the bank simply release funds from the decedent’s account on orders of the decedent’s daughter without prior orders of a court, or must that bank require a court order to release funds from the bank accounts of a deceased person?
4. May a bank be held liable for property lost or stolen from one of its safety deposit boxes when the bank admittedly failed to follow proper banking procedures and protocols by allowing unauthorized persons to enter the box without even signing the signature card or recording their entry into the box?
1 .STANDARD OF REVIEW
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Gonzales v. Kissner, 2008-2154, p. 4 (La.App. 1 Cir. 9/11/09), 24 So.3d 214, 217. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B). Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Aucoin v. Rachel, 2008-1180, p. 5 (La.App. 1 Cir. 12/23/08), 5 So.3d 197, 200, writ denied, 2009-0122 (La.3/27/09), 5 So.3d 143.
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue *533 of material fact, and the mover is entitled to summary judgment. La. Code Civ. P. art. 966(C)(2); Robles v. ExxonMobile, 2002-0854, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-730. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether the mover-appellant is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, 2003-3439 (La.2/20/04), 866 So.2d 830.
ANALYSIS

Release of Funds without Court Authority

The initial issue raised by Richard is whether the trial court erred in failing to apply the legal presumption of liability against the Bank. Richard asserts the Bank was a compensated depositary that failed to account for deposits under its exclusive care, custody, and control.
It is evident from the record that decedent had several accounts at the Bank prior to her death.[3] In correspondence dated July 30, 2001, Julie wrote to the bookkeeping department of the Bank advising of decedent’s death on July 27, 2001. At that time, Julie requested that the Bank “freeze” decedent’s “bank accounts until disposition of the estate.” The only account referenced in this letter was the Kennedy Succession account No. 344-117. In her deposition testimony, Ms. Henderson stated that the Bank imposed a “freeze” on the Kennedy Succession account that day, July 30, 2001.
The record further reflects that on August 14, 2001, Julie opened a checking account (No. 390-232) at the Bank entitled “Succession of Sylvia Antonia Acosta Kennedy-Graves” (hereinafter, “the Decedent’s Succession Account”). Julie was the only authorized signatory on the Decedent’s Succession Account. Through a facsimile transmission addressed “To Whom It May Concern,” and sent the following day, August 15, 2001, at approximately 6 p.m., Julie advised the Bank of her appointment as executrix of decedent’s estate. In connection therewith, Julie forwarded copies of decedent’s death certificate and letters testamentary. In duplicate correspondence alternately referencing the Kennedy Succession account (No. 344-117) and the Joint Account (No. 365-572), Julie requested that funds from said accounts be transferred to the Decedent’s Succession ^Account.[4] Said correspondence specifically directed that “[n]o funds are to be paid directly to any beneficiary or anyone other than the [Dece *534 dent’s] Succession/Estate Account, per the order of the court.”
In her deposition, Ms. Henderson testified that she had been employed by the Bank for 28 years. Ms. Henderson also admitted that although she had no training in Louisiana succession law, and had not attended any seminars involving succession law, she was generally aware that a succession representative needed to be court-appointed. Ms. Henderson denied having any knowledge as to what is required for an administrator to carry out his or her duties with respect to bank accounts. Ms. Henderson confirmed that at Julie’s direction she issued cashier’s checks on the Kennedy Succession account (No. 344-117) to pay invoices submitted by attorneys Witt and Stamps. Copies of $44,275.62 in transactions processed on the Kennedy Succession account (No. 344-117) for the period July 2001 through April 2002 were attached in globo to Ms. Henderson’s deposition as Exhibit “SH-8.”[5] This account was eventually closed due to insufficient funds on November 19, 2002.
Through a court order signed January 15, 2002, Julie obtained authorization to pay $6,150.73 in urgent debts owed by the decedent. Said debts included payment of property taxes, flood insurance premium, safety deposit box and mail box rentals, and reimbursement of $5,533.85[6] for decedent’s funeral expenses. Ms. Henderson admitted that at Julie’s direction following court authorization, she issued a cashier’s check debiting the Decedent’s Succession Account (No. 390-232) for the payment of property taxes.
lain their brief to this court, the Bank and Ms. Henderson contend that Richard’s claims regarding the Bank’s “unauthorized” issuance of cashier’s checks are barred due to application of La. R.S. 10:4-406.[7] The Bank and Ms. Henderson claim that it was incumbent upon Richard “to examine his monthly statement and to ‘... exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized ... ’ ” Several paragraphs later, the Bank and Ms. Henderson admit that previously, on July 30, 2001, Julie, in her capacity as decedent’s succession representative, instructed the Bank to forward all statements and items regarding the Kennedy Succession account (No. 344-117) to Julie’s address in Florida. The Bank and Ms. Henderson attempt to argue, albeit unsuccessfully, that they merely acted in accordance with the express wishes of their customer, Julie, who was an authorized signatory on the Kennedy Succession account.[8]
*535 Given Julie’s July 30, 2001 correspondence advising the Bank of decedent’s death, Julie’s request therein that the Bank “freeze” decedent’s “bank accounts until disposition of the estate,” and Ms. Henderson’s deposition testimony confirming the Bank’s imposition of a “freeze” on the Kennedy Succession account as of July 30, 2001; it is unclear why the Bank nevertheless proceeded to process $44,275.62 in transactions on the Kennedy Succession account (No. 344-117) for the period July 2001 through April 2002 when the account funds were depleted. Louisiana Revised Statutes 6:325, when read in connection with La.Code Civ. P. arts. 3222, 3224, 3302, and 3303, prohibits a Bank that receives written notice of the death of a customer from transferring any assets belonging to the deceased person without proper court authority and receiving a receipt therefor.
The trial court clearly erred in granting summary judgment in favor of the Bank and Ms. Henderson.

11(VApplicability of Res Ipsa Loquitur

The second issue raised by Richard is whether the trial court erred in failing to apply the evidentiary doctrine of res ipsa loquitur to establish through circumstantial evidence the negligence of the Bank and Ms. Henderson.
In our previous opinion in Broussard v. Voorhies, 2006-2306, p. 6 (La.App. 1 Cir. 9/19/07), 970 So.2d 1038, 1043, writ denied, 2007-2052 (La.12/14/07), 970 So.2d 535, a panel of this court summarized the law with respect to res ipsa loquitur and stated:
The plaintiff in a negligence case may meet his burden of proof by presenting both direct and circumstantial evidence. Cangelosi v. Our Lady of the Lake Med. Ctr., 564 So.2d 654, 664 (La.1990)(on rehearing). Res ipsa loquitur is not a substantive legal tenet, but rather an evidentiary doctrine under which a tort claim may be proved by circumstantial evidence. Gisclair v. Bonneval, 04-2474, p. 5 (La.App. 1st Cir. 12/22/05), 928 So.2d 39, 42. The doctrine permits the inference of negligence from the surrounding circumstances, and merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available. Cangelosi, 564 So.2d at 665. Because application of res ipsa loquitur is an exception to the general rule that negligence is not to be presumed, it should be sparingly applied. Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La.1992). Generally, it may be applied when three requirements are met: (1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on the defendant’s part. Id.
Based upon our de novo review of this matter, we conclude that application of the doctrine of res ipsa loquitur is not required given the undisputed facts of this case.
The deposition testimony of Ms. Henderson discloses that on January 14, 2002, Julie contracted on behalf of the estate and rented safety deposit box # 94 at the Bank in the name of the Succession of Sylvia Kennedy-Graves.[9] On January 24, 2002, Julie faxed an authorization for *536 Mrs. Witt-Stamps, then-attorney for decedent’s estate, to access the safety deposit box. A copy of the Bank Record of Access to Safe Deposit Vault for Safe #94, attached to Ms. Henderson’s deposition, reveals that during the period of Julie’s 1 n administration, Mrs. Witt-Stamps obtained entry to the safety deposit box on January 24, 2002, February 4, 2002, and April 3, 2002.[10]
Ms. Henderson further stated once a person identifies himself as an authorized user, signs the access record, and produces a “guard key” for a safety deposit box, said individual is permitted to examine the contents of the safety deposit box in the privacy of the Bank “Coupon Room.” Ms. Henderson stated that the Bank does not keep records as to whether customers place items in or remove items from its safety deposit boxes.
It is undisputed that the Bank and Ms. Henderson received notice of the decedent’s death, of Julie’s appointment as executrix, and Julie’s request that the Bank “freeze” decedent’s “bank accounts until disposition of the estate.” It would therefore seem reasonable for the Bank to similarly deny access to a safety deposit box subsequently opened in the name of the decedent’s succession pending a public inventory of it contents or further orders of the court.
Again, it was error for the trial court to grant summary judgment in favor of the Bank and Ms. Henderson.

Necessity for Court Approval to Release Succession Funds

The third issue presented by Richard is whether a bank may release funds from a deceased customer’s account based solely upon the order of a succession representative. In his brief to this court, Richard cites La.Code Civ. P. art. 3301 and asserts that a succession representative must obtain court authorization prior to paying a debt of the succession.
In their appellee brief, the Bank and Ms. Henderson offer the following response:
Apparently, ... Richard ... believes that court approval for each and every check was required, presumably by contradictory motion at a full-blown hearing on routine matters no court is required to referee.... [T]here has never been any law requiring what [Richard] apparently expected, and [Richard] has cited no authority to the contrary. [Underscoring in original.]
112The trial court, in its oral reasons for summary judgment, opined:
I do believe the bank when they have an account set-up for the testamentary and at the time the administrator or admin-istratrix had authority to write checks on the account and authorized those checks to be done, I think the bank is not responsible at that point.
We disagree. Louisiana Code Civil Procedure art. 3301 clearly provides that “[a] succession representative may pay an estate debt only with the authorization of the court, except as provided by Articles 3224 and 3302.”[11] Additionally, La.Code Civ. *537 P. art. 3303 provides, in pertinent part, that “[w]hen a succession representative desires to pay estate debts, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those estate debts to be paid.” Finally, La.Code Civ. P. art. 3307 provides, in pertinent part, as follows:
Art. 3307. Homologation; payment
A. ... If no opposition has been filed, the succession representative may have the tableau of distribution homologated and the court may grant the authority requested at any time after the expiration of seven days from the date of publication or from the date the notice required by Article 3306 is mailed, whichever is later.
B. ...
C. After the delay for a suspensive appeal from the judgment of ho-mologation has elapsed, the succession representative shall pay the debts approved by the court.
The trial court clearly erred in granting summary judgment in favor of the Bank and Ms. Henderson.

Liability of Bank for Lost or Stolen Property

The final issue raised by Richard is whether a bank may be held liable for property lost or stolen from one of its safety deposit boxes. Specifically, Richard argues that given the Bank’s failure to follow proper banking procedure and protocol, the Bank is clearly liable for the loss of jewelry from its safety deposit box.
In light of our previous, undisputed findings regarding the notice received by the Bank and Ms. Henderson, we reiterate our previous holding that the Bank should have | iadenied access to the safety deposit box subsequently opened in the name of the decedent’s succession, pending a public inventory of it contents or further orders of the court.
Once again, it was error for the trial court to grant summary judgment in favor of the Bank and Ms. Henderson.
CONCLUSION
For the above and foregoing reasons, we hereby affirm the denial of the plaintiffs motion for summary judgment under our supervisory jurisdiction, rather than appellate jurisdiction, for the reason that there remain genuine issues of material fact. We nevertheless reverse the trial court’s June 29, 2010 grant of summary judgment in favor of the Bank and Ms. Henderson. Accordingly, the previously dismissed claims against said defendants put forth by Richard, both individually, and in his capacity as executor of decedent’s estate, are hereby reinstated. This matter is remanded to the trial court for further proceedings consistent with this opinion. All costs associated with this appeal shall be assessed against the defendants, Bank of Louisiana and Shirley Henderson.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McCLENDON, J., dissents in part and assigns reasons.

. Attorneys T. Lynn Witt-Stamps and J. Jackson Stamps were later permanently disbarred by the Louisiana Supreme Court for actions related to their dishonesty and untruthfulness. See In re Stamps, 2003-2985 (La.4/14/04), 874 So.2d 113 .

. In his brief to this court, Richard asserts that inasmuch as the Bank and Ms. Henderson failed to appeal from the trial court’s rejection of its arguments as to prescription and abandonment, the Bank and Ms. Henderson are precluded from raising these arguments in connection with the instant appeal.

. In her deposition, Ms. Henderson testified that decedent had a succession account (No. 344-117) for her first husband, Mr. Kennedy, which was opened on June 20, 1972. This account was titled the "Kennedy Succession.” Decedent, and her children, Julie and Richard, were all authorized signatories on this account. There was also another account (No. 365-572) that was a joint account with decedent's second husband, Emory L. Graves. This account was titled "Emory L. Graves or Sylvia Kennedy Graves.” This account will hereinafter be referred to as the "Joint Account.”

. Ms. Henderson testified that the Bank was not able to transfer funds from other accounts in which decedent held an interest without a judgment of possession.

. Of the $44, 275, 62 in transactions processed on the Kennedy Succession account (No. 344-117) for the period July 2001 through April 2002, $39,718.24 was for the payment of invoices to the Witt-Stamps law firm.

. This check, made payable to the Kennedy Succession account (No. 344-117) and dated February 5, 2002, was written on the Decedent's Succession Account (No. 390-232) and signed by Julie. A copy of this check was identified as "Exhibit 11” and attached to Ms. Henderson’s deposition. It is uncertain whether this check was ever negotiated.

. Louisiana Revised Statutes 10:4 — 406(c) provides that if a bank makes available a statement of account, the customer must "exercise reasonable promptness” to determine whether any payment was unauthorized.

. The contention of the Bank and Ms. Henderson that Julie was their customer ignores the reality that the customer of the Bank was actually the decedent’s estate, and the Bank was legally obligated to refrain from dispersing funds without court authority.

. In her deposition testimony, Ms. Henderson stated that safety deposit box # 94 was a large box measuring 10" x 10" x 21-1/4".

. It should be noted that Richard alleges that upon his entry into the safety deposit box (with proper court authority and in the presence of all heirs, all attorneys, and Bank representatives) in 2005, the valuable pieces of jewelry were missing; however, the safety deposit box contained notes allegedly left by attorneys Witt and Stamps detailing several entries into the safety deposit box that were not documented on the Bank access record.

. Louisiana Code of Civil Procedure article 3224 applies to debts incurred in the operation of a business owned by a succession. Louisiana Code of Civil Procedure article 3302 grants authority to a court to authorize *537 the payment of estate debts that should not be delayed.