**EARL A. ADAMS, JR., ET AL.**       *        **NO. 2022-CA-0814**

**VERSUS**                   *

                              **COURT OF APPEAL**

**CHEVRON USA, INC.; EXXON**   *

**MOBIL CORPORATION;**           **FOURTH CIRCUIT**

**SEXTON OIL & MINERAL**     *

**CORPORATION;**               **STATE OF LOUISIANA**

**INTRACOASTAL TUBULAR**   * * * * * * *

**SERVICES, INC,; ALPHA**

**TECHNICAL SERVICES, INC.;**

**OFS, INC.; AND JOSEPH F.**

**GREFER, CAMILLE GREFER,**

**ROSE MARIE GREFER**

**HAASE AND HENRY GREFER**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2002-19308  C\W 2019-00738, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge Dale N. Atkins)

**BROWN, J., CONCURS WITH REASONS**
**ATKINS, J., CONCURS IN THE RESULT**

Darleen Marie Jacobs
THE LAW OFFICES OF DARLENE M JACOBS
823 St. Louis Street
New Orleans, LA 70112—3415

AND

Robert G. Harvey, Sr.
LAW OFFICE OF ROBERT G. HARVEY, SR., APLC
600 North Carrollton Avenue
New Orleans, LA 70119

     COUNSEL FOR PLAINTIFFS/APPELLANTS, EARL ADAMS, JR., ET AL.

Kevin E. Huddell
Michael Peter Arata
Lynn Elizabeth Swanson

Lindsay Reeves
JONES SWANSON HUDDELL & GARRISON, LLC
601 Poydras Street, Suite 2655
New Orleans, LA 70130

COUNSEL FOR DEFENDANTS/APPELLEES, JOSEPH GREFER &
SUZANNE H. DELAHOUSSAYE, EXECUTRIX OF THE SUCCESSION
OF CAMILLE CLAIRE GREFER

**REVERSED AND REMANDED**

This appeal arises from a dispute over responsibility for contaminating land in Harvey, Louisiana. Defendants/Appellees, Joseph Grefer and Suzanne H. Delahoussaye, Executrix of the Succession of Camille Claire Grefer (collectively "Grefers"), owned land where, pursuant to a lease, numerous oil companies cleaned oilfield pipes. Plaintiffs, Earl A. Adams, et al. ("Plaintiffs") contended that the oilfield pipe cleaning activities released radioactive materials onto their neighboring property, causing harm. Plaintiffs eventually entered into a 2014 settlement agreement with some defendants responsible for the cleaning activities.

However, Plaintiffs also sought damages from the Grefers for their own alleged individual negligence for the contamination. The Grefers filed a Motion to Enforce Settlement, averring the 2014 settlement agreement released the Grefers from any liability. The trial court agreed, granted the Motion to Enforce Settlement, and dismissed all of Plaintiffs' claims against the Grefers. Plaintiffs appealed. This Court found that the trial court erred by failing to conduct an evidentiary hearing regarding Plaintiffs' intent in entering into the 2014 settlement agreement and remanded the matter to the trial court for the hearing.

On remand, the trial court conducted an evidentiary hearing and allowed the

parties to submit evidence and elicit live testimony regarding the intent of the parties. The trial court concluded that there was no need to consult extrinsic evidence in order to interpret the 2014 settlement agreement. The trial court found that the Grefers were included in the released/indemnified parties in the 2014 settlement agreement. Therefore, the trial court granted the Grefers' Motion to Enforce Settlement and dismissed Plaintiffs' claims with prejudice.

On review, we find the trial court erred by disregarding testimony presented at the evidentiary hearing. Evidence demonstrated that Plaintiffs did not intend to release third parties for their own negligence. Further, the 2014 settlement agreement did not explicitly create a stipulation pour autrui. As such, the trial court committed manifest error by granting the Grefers' Motion to Enforce Settlement. We reverse the trial court's judgment and reinstate Plaintiffs' dismissed claims. The matter is remanded for further proceedings consistent with this opinion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Camille A. Grefer leased the land in question to Intracoastal Terminal, Inc. ("ITCO") for oil-field supply cleaning activities, which resulted in the contamination of the land. Plaintiffs contended that the cleaning activities also contaminated their neighboring land and filed suit against numerous defendants, including oil companies, cleaning companies, and landowning defendants, like the Grefers. Plaintiffs entered into a 2014 settlement agreement with a majority of the defendants. However, Plaintiffs continued to seek damages from the Grefers based on their own individual negligence.

The present appeal returns to this Court following a previous remand, wherein we stated:

2

This case arises out of the contamination of a parcel of land with naturally occurring radioactive material (NORM), resulting from of oil-field supply cleaning activities. The neighboring landowners filed suit against several defendants involved in the oil-field supply cleaning activities, as well as the landowners of the contaminated property. Eventually, the plaintiffs entered into settlement agreements with most of the defendants with the exception of the landowners. The landowners did not participate in the settlements, did not contribute to the settlements, and were not parties to the settlements.

Several years after the plaintiffs had entered into the settlement agreements with other defendants, the landowner defendants, on June 20, 2018, filed a motion to enforce settlement agreement against the plaintiffs. A hearing on the motion took place on August 30, 2018. After considering the motions, supporting memoranda, and the exhibits thereto and opposition, as well as the oral arguments presented by counsel, the trial court granted the defendants' motion and dismissed the plaintiffs' claims with prejudice on September 11, 2018. It is from this judgment that the plaintiffs now appeal.

The issue before this Court is whether the trial court erred in preventing the plaintiffs from offering evidence of the intent of the actual settling parties regarding the scope of the settlement and in dismissing the plaintiffs' case.

The issue presented by this appeal is a question of law. Questions of law are reviewed *de novo*, with judgment rendered " 'on the record, without deference to the legal conclusions of the tribunals below.' " *Holly J. Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-0582, p. 9 (La. 11/29/06), 943 So.2d 1037, 1045; quoting *Louisiana Municipal Association v. State*, 04-0227, p. 35 (La. 1/19/05), 893 So.2d 809, 836. "We are also mindful that when legal error committed by the trial court interdicts the fact-finding process, the appellate court must conduct a *de novo* review of the record." *Kennedy-Fagan v. Estate of Graves*, 07-1062, p. 11 (La.App. 1 Cir. 7/21/08), 993 So.2d 255, 264; citing *Levy v. Bayou Industrial Maintenance Services, Inc.*, 03-0037, p. 7 ((La.App. 1 Cir. 9/26/03), 855 So.2d 968, 974.

When a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. *Maggio v. Parker*, 17-1112, p. 4 (La. 6/27/18), 250 So.3d 874, 879 (internal citations omitted). In *Maggio*, the Louisiana Supreme Court explained and affirmed a long history of cases which

3

established, recognized, and applied an exception to the "four corners" rule when interpreting settlement agreements. *Id.* at 879; See *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741. A compromise settles only those differences that the parties clearly intended to settle. *Maggio* at 879. See La. C.C. art. 3076. Accordingly, the plaintiffs in the instant case contend that a clearly established exception to the "four corners" rule allows them to offer evidence.

In the instant case, it is undisputed that the landowner defendants are not parties to any settlement agreement with the plaintiffs. It is also undisputed that the landowner defendants did not contribute to any settlement agreement with the plaintiffs. As the landowner defendants are never mentioned in the four corners of any of the settlement agreements, the only way they could have been dismissed is by reference to something outside the agreements themselves.

Under these circumstances, the trial court should have considered the evidence of the intent of the actual parties to the settlement concerning whether the landowner defendants would or would not be released. To not do so interdicted the fact-finding process. Therefore, the district court erred as a matter of law in refusing to allow the plaintiffs an opportunity to offer evidence of the intent of the settling parties, i.e., a contradictory hearing where the parties could have called witnesses and introduced other extrinsic evidence to establish the true intent of the parties to the settlement.

For the above and foregoing reasons, the judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.

*Adams v. Chevron USA, Inc.*, 19-0210, 19-0210, 19-0198, 19-0199, 19-0708, 20-0069, 20-0070, pp. 1-4 (La. App. 4 Cir. 2/24/21), 2021 WL 717778, *1-2, ___ So. 3d ___, ___, *writ denied*, 21-00446 (La. 5/25/21).

After remand, the trial court conducted an evidentiary hearing wherein the Grefers and Plaintiffs were permitted to submit evidence and elicit live testimony regarding the intent of the settling parties. Following the hearing, the trial court determined that the Grefers were indemnitees and released parties, as defined by the 2014 settlement agreement. The trial court granted the Grefers' Motion to

Enforce Settlement and dismissed Plaintiffs' claims with prejudice. Plaintiffs' appeal followed.

On appeal, Plaintiffs contend the trial court committed legal error by 1) choosing "to disregard the law of this case regarding the reception and consideration of extrinsic evidence concerning the compromise instrument's intentions and . . . re-interdicted the fact finding process despite Adams' original rebuke of the trial court for interdicting intent focused fact-finding concerning the conjunction of the release and the Grefers;" and 2) misinterpreting "the subject compromise instrument."

## STANDARD OF REVIEW

"The standard of review of a motion to enforce settlement is the manifest error/clearly wrong standard." *Eckstein v. Becnel*, 17-0868, p. 8 (La. App. 4 Cir. 6/27/18), 250 So. 3d 1046, 1053. This is due in part to the fact that a "judgment regarding the existence, validity and scope of a compromise or settlement agreement hinges on its finding of the parties' intent," which is a factual finding. *Id*.

"[A] reviewing court may not merely decide if it would have found the facts of the case differently." *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So. 2d 90, 98. Rather, "one of the basic tenets of the manifest error standard of review is that 'reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the court of appeal is convinced that had it been the trier of fact, it would have weighed the evidence differently.'" *Id*., 03-1734, pp. 10-11, 874 So. 2d at 99 (quoting *Parish Nat. Bank v. Ott*, 02-1562, p. 7 (La. 2/25/03), 841 So. 2d 749, 753). The Louisiana Supreme Court pronounced a two-prong test for reversing factual findings. First, "[t]he

5

appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882 (La. 1993). Second, "the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous)." *Id.*

"The interpretation of the language of a contract is a question of law subject to *de novo* review, while factual determinations are subject to the manifest error standard of review." *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 17-0595, p. 7 (La. App. 4 Cir. 2/14/18), 317 So. 3d 351, 357.

"When the issues presented on appeal raise mixed questions of fact and law, the manifest error standard applies." *Lakefront Mgmt. Auth. v. J & J Partners, L.L.C.*, 21-0102, p. 6 (La. App. 4 Cir. 11/10/21), 331 So. 3d 434, 438, *writ denied*, 21-01855 (La. 2/15/22), 332 So. 3d 1188. "Questions of law are reviewed under the *de novo* standard." *Sarpy v. ESAD, Inc.*, 07-0347, p. 4 (La. App. 4 Cir. 9/19/07), 968 So. 2d 736, 738.

### *EVIDENTIARY HEARING*

*Brian David Long*

Brian David Long, testified that his mother, Elda Long, passed away from radiation poisoning, but was a member of the original class action. He and his brother were substituted in her place after her death. He stated that he reviewed the 2014 settlement agreement for about two hours, with his attorney going over the document with him prior to signing. Mr. Long testified that he knew he was releasing the oil companies. Mr. Long did not believe he was releasing the Grefers because he believed the Grefers should be held liable. He did not receive money from the Grefers. He believed he was reserving his right against the Grefers and

did not intend to release them. However, he did not ask if a particular party was excluded from the 2014 settlement agreement. Mr. Long did not request that any changes to the 2014 settlement agreement prior to signing.

When questioned about the definition of released parties contained in the 2014 settlement agreement, Mr. Long stated, "I mean, this eliminates everybody, if you think about it." Mr. Long conceded that he did not read the entire Receipt and Release document prior to signing or ask for any explanations.

### Joseph F. Grefer

Joseph F. Grefer, a retired judge and defendant in the original proceeding, testified that he is a co-owner of the property in question. His mother, Camille Grefer, signed the original lease for use of the land by ITCO. Mr. Grefer was not a signatory to the 2014 settlement agreement. He did not believe he had ever paid money to settle the lawsuit.

### Mary Johnson

In lieu of live testimony, Mary Johnson's deposition was offered into evidence. She represented the original Shell/Kerr-McGee entities in the original litigation and drafted the 2014 settlement agreement. Ms. Johnson testified that the Grefers were not settling defendants included in the 2014 settlement agreement, and that the Grefers did not contribute to the settlement.

In regards to whether the 2014 settlement agreement included releasing third parties, Ms. Johnson stated: "[w]e have a release to the extent that any of the settling defendants owed indemnity to anyone else, but there was not an intent to release any third party's own negligence or fault." Ms. Johnson further explained that it was not intended to include the Grefers' interests in the settlement. The Grefers were also not intended to be included as a released party because only

7

parties that contributed to and signed the settlement were to be considered released.

Ms. Johnson conceded that generally settlement agreements/releases include all claims and parties. Ms. Johnson also admitted that the section in the 2014 settlement agreement concerning released parties was more broad than the section entitled settling defendants. However, she reiterated that the 2014 settlement agreement was not intended to release the separate negligence or liability of third parties. Ms. Johnson emphasized again that the Grefers were only released as to the extent of ITCO's indemnity obligation.

***Joint Motion for Final Dismissal***

Based on the 2014 settlement agreement, 356 original Plaintiffs, in June 2014, submitted a Joint Motion for Final Dismissal to dismiss:

> claims and any and all cross-claims, third-party demands, or petitions in intervention in this litigation against the following Defendants: Alpha Technical Services, Inc., Amoco Production Company, n/k/a BP America Production Company; ARCO Oil & Gas Company, BP Exploration & Oil Inc. and /or Amoco Oil Company, Atlantic Richfield Company, Chevron U.SA. Inc., individually and as successor to Gulf Oil Corporation, and/or Gulf Oil Exploration & Production Company; ConocoPhillips Company, successor by merger to Conoco, Inc., Transco Exploration Company as successor to Exchange Oil & Gas Corporation; Exxon Mobil Corporation, individually and as successor to Exxon Corporation and Mobil Oil Corporation; Intracoastal Tubular Services, Inc., individually and as the successor corporation to Intracoastal Truck Line, Inc., Intracoastal Pipe Repair and Supply Co., and Intracoastal Terminal, Inc.; Anadarko US Offshore Corporation f/k/a Kerr-McGee Oil & Gas Corporation; Kerr-McGee Oil & Gas Company f/k/a Kerr-McGee Corporation; Marathon Oil Company; Mobil Exploration & Producing U.S., Inc.; OFS, Inc., individually and as successor corporation to Oil Field Sales and Service, Inc.; Shell Offshore Inc.; Shell Oil Company; SWEPILP, individually and as successor to Shell Western E&P. Inc.; and Texaco Inc.

The Joint Motion for Final Dismissal was granted by the trial court on June 23,

2014. The Grefers were not included in the Joint Motion for Final Dismissal. Notably, the judgment signed by the trial court "expressly reserved" Plaintiffs' claims against all other defendants.

### TRIAL COURT'S FINDINGS AFTER EVIDENTIARY HEARING

After listening to the testimony, the trial court issued reasons for judgment, which provided:

> This Court believed that the four corners of the Agreement evidenced the intent of the parties. However, following the directive of the Louisiana Fourth Circuit Court of Appeal in *Earl A. Adams Jr., et al, v. Chevron USA, Inc.*, 2019-0210 (La. App. 4 Cir. 2/24/21), *writ denied*, 2021-00446 (La. 5/25/21), on July 19, 2022, the Court conducted an evidentiary hearing in order to consider extrinsic evidence of the intent of the actual settling parties regarding the scope of the Agreement. As stated above, in 2014, the "Settling Plaintiffs" settled their claims with the Pipe Contractor Defendants, Oil Company Defendants, and two Landowner Defendants. In their Motion to Enforce Settlement Agreement, The Grefer Defendants assert that they are included in the definition of "Released Parties" in the Agreement as an "indemnitee" of the Released Parties identified in Exhibit C (of the Agreement) and as a party for whom one or more of the named "Settling Defendants" "are or may be liable." Because they are included in the definition of Released Parties, the Grefer Defendants believe all claims asserted against them by Plaintiffs should be dismissed with prejudice. Plaintiffs assert that the Grefer Defendants cannot enforce the Agreement because they were not parties to the Agreement, and the evidence demonstrates they did not intend to settle their claims against the Grefer Defendants with the Agreement.
>
> For the purposes of the Motion to Enforce, the issue before the Court is whether Plaintiffs intended to release the indemnitees of the Settling Defendants or persons to whom the Settling Defendants were liable or were potentially liable. At the evidentiary hearing. Plaintiffs presented the live testimony of Brian Long and Joseph Grefer and submitted the deposition testimony of Mary Johnson.
>               *           *           *
> As it relates to the Motion to Enforce, the issue is whether the 2014 Agreement provides means for the

9

dismissal of Plaintiffs' claims against the Grefer Defendants. In order to analyze this issue, the Court must determine whether the Grefer Defendants are considered parties to the Agreement, thereby granting them enforcement rights, and whether the Agreement unequivocally absolve the Grefer Defendants of liability to the Plaintiffs.

\*      \*      \*

Following the directive of the Fourth Circuit, this Court conducted a contradictory hearing in order to allow the plaintiffs an opportunity to offer evidence of the intent of the settling parties. Plaintiffs called witnesses (Mr. Long, Mr. Grefer, and Ms. Johnson via deposition) and introduced other extrinsic evidence, such as the Joint Motion to Dismiss, to demonstrate their intent was not to include the Grefer Defendants as a party to the Agreement. However, Plaintiffs failed to present evidence of any mistake or misunderstanding sufficient to contradict the terms of the Agreement. Plaintiffs failed to provide any evidence of their state of mind or intent (as the releasors) that demonstrated at the time the Agreement was executed, they were either (1) mistaken as to what they were signing, or (2) did not fully understand the nature of the rights being released or that they did not intend to release certain aspects of their claims. As such, adopting the *Maggio* Court's limited application of extrinsic evidence exception approach, this Court finds that the intent of the parties is best expressed by the four comers of the Release.

\*      \*      \*

Based on the language used in the Agreement, the scope of all the released claims is comprehensive and releases the Released Parties, which includes the Grefer Defendants, from all of Settling Plaintiffs' claims. The Agreement does not distinguish which of Plaintiffs' claims against the Grefer Defendants are included or excluded from the settlement. In their post-hearing memorandum, Plaintiffs state, "*Brown* defeats the present Motion because 'if the release instrument leaves ***any*** doubt as to whether a particular future action is covered by the compromise, ***it should be construed <u>not to cover</u> such future action***.'' *Brown*, *supra*, at 753-54 (emphasis added)."[10] In *Brown v. Drillers, Inc.*, 93-CC-1019 (La. 1/14/94), 630 So.2d 741, the case cited by Plaintiffs, the Louisiana Supreme Court "...recognized that 'fail[ure] to use language in the contract which would have clearly provided for waiver of [a] future action' evidences a lack of intent to compromise such future action." *Brown* at 754. An examination of the Release language clearly

demonstrates an intent to release the Released Parties … from any and all liability, rights, demands, claims... which Settling Plaintiffs had in the past, may have now or **which they may hereafter acquire**, arising out of, or in any way related to the Litigation…" (emphasis added). This language clearly refers to future actions and evidences an intent to compromise these future actions. Consequently, the Agreement unequivocally absolves the Grefer Defendants, as Released Parties, of liability to the Plaintiffs.

As such, based on the evidence and the law presented, the Court finds that the Grefer Defendants are "Released Parties" under the Agreement, and the Agreement absolves the Grefer Defendants, as "Released Parties", of liability to the Plaintiffs. Therefore, the Court grants the Motion to Enforce Settlement.

Accordingly, we must determine if the trial court, on remand, erred by granting the Motion to Enforce Settlement.

### *MOTION TO ENFORCE SETTLEMENT*

When interpreting a settlement agreement, the Louisiana Supreme Court provided guidelines as follows:

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071. The compromise instrument is governed by the same general rules of construction applicable to contracts. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741, 748. Therefore, in interpreting a contract, the analysis must start with the premise that legal agreements have the effect of law upon the parties and that the courts are bound to give legal effect to all such contracts according to the true intent of the parties. *Leenerts Farms, Inc. v. Rogers*, 421 So.2d 216 (La. 1982). *See also Brown*, 630 So.2d at 748 (a compromise "must be interpreted according to the parties' true intent"). This principle is enshrined in the Civil Code, which states: "A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. C.C. art. 3076.

Accordingly, when the words of the settlement agreement are clear and explicit and lead to no absurd consequences, no further interpretation may be made in

11

search of the parties' intent. C.C. art 2046. However, Louisiana courts have crafted a jurisprudential exception to the extrinsic evidence rule for compromise agreements. When a dispute arises as to the scope of a compromise agreement, "extrinsic evidence can be considered to determine exactly what differences the parties intended to settle." *Brown*, 630 So.2d at 749. As this Court unanimously remarked in *Brown*, an opinion authored by Justice Pike Hall, a "long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release." *Id.* Intent is determined by reading the compromise instrument "in light of the surrounding circumstances at the time of execution of the agreement." *Id.* at 748–49. The parties to a release instrument are therefore "permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal." *Id.*

In interpreting this jurisprudential rule, courts have cautioned that, absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four comers of the instrument to ascertain intent. *Brown*, 630 So.2d at 749. Therefore, utilizing a case-by-case analysis, Louisiana courts have limited the application of the extrinsic evidence exception to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. *Id.* When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts have applied the general rule of construction in La. Civ. Code art. 2046 and have not hesitated to confine their analysis to the four corners of the instrument. *Brown*, 630 So.2d at 749.

*Maggio v. Parker*, 2017-1112, pp. 4-5 (La. 6/27/18), 250 So. 3d 874, 878-79.

Furthermore, this Court outlined the interpretation of contracts as follows:

In interpreting contracts, we are guided by the general rules contained in La. C.C. arts. 2045-2057. La. C.C. art. 2045 states that the interpretation of a contract is the determination of the common intent of the parties. To ascertain the parties' intent, the court must first look to the words and provisions of the contract. *Amend v.*

12

*McCabe*, 95-0316, p. 7 (La. 12/1/95), 664 So.2d 1183, 1187. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. When the language of the contract is unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. La. C.C. art. 2046, comment (b). Moreover, to determine the meaning of words used in a contract, a court should give them their general prevailing meaning. If a word is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. C.C. art. 2049. The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms thereof. *Ortego v. State, Dept. of Transp. and Development*, 96-1322, p. 7 (La. 2/25/97), 689 So.2d 1358, 1363. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after examination of the four corners of the agreement. *Richard A. Tonry, P.L.C. ex rel. Tonry v. Constitution State Service, L.L.C.*, 2002-0536, p. 3 (La. App. 4 Cir. 7/17/02), 822 So.2d 879, 881. Therefore, each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053.

*Bd. of Supervisors of Louisiana State Univ. v. 2226 Canal St., L.L.C.*, 18-0254, pp.

4-5 (La. App. 4 Cir. 12/19/18), 262 So. 3d 909, 914-15 (quoting *French Quarter*

*Realty v. Gambel*, 05-0933, pp. 6-8 (La. App. 4 Cir. 12/28/05), 921 So. 2d 1025,

1029-30).

The trial court stated:

Plaintiffs failed to present evidence of any mistake or misunderstanding sufficient to contradict the terms of the Agreement. Plaintiffs failed to provide any evidence of their state of mind or intent (as the releasors) that demonstrated at the time the Agreement was executed, they were either (1) mistaken as to what they were signing, or (2) did not fully understand the nature of the rights being released or that they did not intend to release certain aspects of their claims.

The fact-finding process was not completed. As, we previously found:

the trial court should have considered the evidence of the intent of the actual parties to the settlement concerning whether the landowner defendants would or would not be released. To not do so interdicted the fact-finding process. Therefore, the district court erred as a matter of law in refusing to allow the plaintiffs an opportunity to offer evidence of the intent of the settling parties, i.e., a contradictory hearing where the parties could have called witnesses and introduced other extrinsic evidence to establish the true intent of the parties to the settlement.

*Adams*, 19-0210, 19-0210, 19-0198, 19-0199, 19-0708, 20-0069, 20-0070, p. 3, 2021 WL 717778, *2, ___ So. 3d at ___. However, the trial court dismissed the evidence presented.

Specifically, Mr. Long, as a settling plaintiff and signatory to the 2014 settlement agreement, testified that he did not believe he was releasing the Grefers, in that they needed to be held liable. Further, he had not received any money from the Grefers. Likewise, Ms. Johnson, as the drafter of the 2014 settlement agreement, testified that the parties never intended to release third parties for their own negligence. Furthermore, the Joint Motion for Final Dismissal did not include the Grefers as a settling party and the judgment of dismissal "expressly reserved" Plaintiffs' claims against other defendants. In fact, Plaintiffs litigation against the

14

Grefers continued post-dismissal.[1] This testimony and documentary evidence, if considered, substantiated the assertion that Plaintiffs did not intend to release certain aspects of their claims, i.e., releasing the Grefers for their own negligence. As such, the trial court erred by excluding all testimony and confining the analysis to the four corners of the 2014 settlement agreement.

Turning to the 2014 settlement agreement entered into by Plaintiffs and settling defendants, we note the following rights and benefits were conferred:

> This Agreement is intended to confer rights and benefits only on the Parties hereto **and the Released Parties** and is not intended to confer any right or benefit upon any other Person and/or entity. No Person, other than Settling Plaintiffs/Claimants and the Released Parties shall have an enforceable right under this Agreement. The Parties do not intend, by this Agreement, to make any Person a "third party beneficiary" nor to create any "stipulation por autrui" in favor of any third party. All rights and/or causes of action for any breach of this Agreement are reserved to Settling Plaintiffs and the Released Parties. (emphasis added).

The term "Released Parties" was defined thusly:

> H. The term "Released Parties" shall mean, collectively, all parties identified on Exhibit "C". In addition to the entities identified in Exhibit C, the term "Released Parties" shall also include each entity's current and former agents, servants, brokers, contractors, subcontractors, employees, employers, officers, directors, managers, shareholders, stockholders, administrators, managers, attorneys, representatives, insurers, reinsurers, excess insurers, and underwriters, as well as each of their respective predecessors, successors, parents, owners, joint owners, subsidiaries, divisions, operating companies, unincorporated divisions, assigns, **indemnitees, indemnitors**, co-owners, joint owners, partners, general partners, joint venture partners, limited partners, and affiliates, and all of their respective

---

[1] Plaintiffs filed amending and supplemental petitions after signing the 2014 settlement agreement. Specifically, the request for leave to file the Fourth Amending and Supplemental Petition occurred in May 2014. A few days after, the Grefers filed their initial Motion to Enforce Settlement.

15

employees, officers, directors, managers, shareholders, agents, and representatives, even though they were not named in the Petition for Damages and all supplements and amendments thereto. The term "Released Parties" shall also include the named Settling Defendants in this Litigation as defined in Paragraph G, **and any other Person for which these named Settling Defendants are or may be liable, whether in contract, tort or equity, in connection with, relating to, or arising from the claims asserted in the Litigation.** It is expressly agreed that the release of insurers, reinsurers, excess insurers, and underwriters herein is solely to the extent that they provided services or insurance to the Settling Defendants, and the term "Released Parties" does not include any non-settling insurers, reinsurers, excess insurers or underwriters whose liability is not derived from providing services or insurance to the Released Parties. (emphasis added).

While the trial court considered the Grefers as released parties and/or indemnitees, it is undisputed that the Grefers were neither a party to nor assisted with drafting the language for the 2014 settlement agreement, and did not contribute to the monetary settlement. Hence, there was a lack of reciprocal concessions between the Grefers and Plaintiffs. Reading the 2014 settlement agreement in conjunction with the testimony presented at the evidentiary hearing and undisputed facts demonstrates that Plaintiffs did not intend to settle claims against the Grefers for their own negligence. As stated by Ms. Johnson, "[w]e have a release to the extent that any of the settling defendants owed indemnity to anyone else, but there was not an intent to release any third party's own negligence or fault."

Further, as described by the *Maggio* Court, the Grefers did not present evidence that the settling parties intended to convey a third-party benefit upon them.

Pursuant to La. C.C. art. 1978, "[a] contracting party may stipulate a benefit for a third party" who is not named in the contract; in Louisiana, such a contract for the benefit of a third party is called a "stipulation pour autrui." *See*

> *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*,
> 05-2364, p.9 (La. 10/15/06), 939 So.2d 1206, 1212. A
> stipulation pour autrui is never presumed. *Id*. There are
> three criteria for determining whether contracting parties
> have provided a benefit for a third party: 1) the
> stipulation is "manifestly clear"; 2) there is certainty as to
> the benefit provided the third party; and 3) the benefit is
> not a "mere incident of the contract between the promisor
> and the promisee." *Id*. In short, the "most basic
> requirement" of a stipulation pour autrui is that the
> contract manifest a clear intention to benefit the third
> party; absent such a clear manifestation, a party claiming
> to be a third party beneficiary cannot meet his burden of
> proof. *Id*. (citations omitted).

*Maggio*, 17-1112, pp. 6-7, 250 So. 3d at 880.

Firstly, as the procedural history of this Motion to Enforce Settlement has highlighted, there is no "manifestly clear" benefit conveyed to a third party. In fact, the 2014 settlement agreement contained the following language to specifically exclude the release of third parties:

> IX. NO RELEASE OF THIRD PARTIES
> It is expressly understood and agreed that nothing stated
> or contained in this Agreement shall be taken, or
> construed, to release any Settling Plaintiff/Claimant's
> claims against any other non-settling party/parties, be
> they in the Litigation or otherwise, except as otherwise
> provided herein.

Secondly, as a corollary to the first requirement and for similar reasoning, there is no certainty as to the alleged benefit bestowed upon a third party. Thirdly, any benefit upon a third party that could possibly be "otherwise provided herein," such as being considered a "released party" or indemnitee, was created as a "mere incident" of the settlement confected between the settling defendants and Plaintiffs. The Grefers were not included in the 2014 settlement agreement, were not involved in the drafting of the 2014 settlement agreement, and did not contribute to the monetary compensation provided to Plaintiffs as a result of the 2014 settlement

17

agreement. In addition, the section of the 2014 settlement agreement on rights and benefits conferred provided specifically that "[t]he Parties do not intend, by this Agreement, to make any Person a 'third party beneficiary' nor to create any 'stipulation por autrui' in favor of any third party." Thus, there was no clear manifestation of a stipulation pour autrui.

As this Court and the Louisiana Supreme Court stated, "a stipulation pour autrui is never presumed." *Albe v. City of New Orleans*, 12-0073, p. 5 (La. App. 4 Cir. 7/5/12), 97 So. 3d 583, 587. "Not every promise, performance of which may be advantageous to a third person, will create in him an actionable right." *Id.*, 12-0073, p. 6, 97 So. 3d at 588 (quoting *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 05-2364, p. 9 (La. 10/15/06), 939 So. 2d 1206, 1212). The terms of the 2014 settlement agreement have been debated for years in the present litigation. The absence of a manifestly clear stipulation lends to the finding that any benefit the Grefers might have gained were simply a mere incident to the 2014 settlement agreement. *See Albe*, 12-0073, p. 8, 97 So. 3d at 589. "Each case must be decided on a case-by-case basis." *Scarberry v. Entergy Corp.*, 14-1256, p. 7 (La. App. 4 Cir. 5/6/15), 172 So. 3d 51, 57 (quoting *Dugas v. Thompson*, 11-0178, p. 11 (La. App. 4 Cir. 6/29/11), 71 So. 3d 1059, 1066). Accordingly, based on the facts and circumstances presented, evidence of a stipulation pour autrui is lacking.

## *DECREE*

For the above-mentioned reasons, we find that the trial court interdicted the fact-finding process and erred by disregarding the testimony presented at the evidentiary hearing. Upon conducting our review combining our interpretation of the 2014 settlement agreement with the testimony presented and applying applicable law, we find that Plaintiffs did not intend to release third parties for their

own negligence.  The 2014 settlement agreement did not create a stipulation pour autrui for the Grefers such that they were released from their own negligence. Accordingly, we reverse the judgment of the trial court that granted the Grefers' Motion to Enforce Settlement, reinstate Plaintiffs' claims against the Grefers, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**